471 So.2d 1029 (1985)
STATE of Louisiana
v.
Willie STARKS.
No. 84 KA 1494.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
*1030 Ossie Brown, Dist. Atty. by Joe Lotwick, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
David Price, Asst. Public Defender, Public Defenders' Office, Baton Rouge, for defendant-appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
Willie Starks was charged by bill of information with simple burglary, in violation of LSA-R.S. 14:62. Starks was tried by a jury, which convicted him as charged, and he was subsequently sentenced to serve twelve years at hard labor, to run consecutively to any other sentence that he might now be serving. He has appealed, alleging five assignments of error, as follows:
1. The trial court erred when it ruled the state had satisfied defendant's discovery and Brady motions.
2. The trial court erred when it allowed state exhibit S-7 into evidence over defendant's objection.
3. The trial court erred when it allowed state exhibit S-10 into evidence over defendant's objection.

*1031 4. The trial court erred when it allowed state exhibits S-11 and S-12 into evidence over defendant's objection.
5. The trial court erred when it denied defendant's motion for a mistrial.
Assignment of error number three was not briefed and therefore is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4. Stark's objection to the admission of state exhibit S-12 was not briefed and is therefore considered abandoned.[1]
Starks was charged with the burglary of Caruso's Grocery in Baton Rouge, Louisiana. Celeste Caruso, a partial owner and manager of the store, testified at trial, and related that she arrived at the store early one morning and discovered that the front door had been tampered with. Mrs. Caruso did not enter the store, but instead immediately summoned the police. Upon inspection, she determined that a small safe had been broken into, and approximately $170.00 in coins and small bills had been removed. An apartment within the store had been ransacked, and a television set, a revolver, and a number of personal items had been removed.
Corporal Charles Raymond Wallace of the Baton Rouge City Police testified at the trial, relating that he had assisted the investigatory officers at the crime scene, and had dusted several items for fingerprints. Based in part on information furnished by Kenneth Starks, the brother of Starks and an employee of the grocery, the fingerprints obtained by Wallace were identified as those of Willie Starks. Starks was arrested approximately two weeks after the burglary.

ASSIGNMENTS OF ERROR NUMBER ONE AND FIVE
In these assignments of error, Starks argues that the trial court erred in ruling that the state had satisfied his discovery and Brady motions, and by failing to declare a mistrial when the fingerprint evidence was introduced.
Starks filed a motion for discovery in which he requested the state to produce the results or reports of scientific tests or experiments made in connection with or material to this case which were intended for use at trial and in the possession, custody, control or knowledge of the state, and a motion requesting the production of any exculpatory evidence to which he would be entitled. The state responded that it did not have material which would meet Starks' requests. Thereafter, Starks filed a supplemental motion for discovery, specifically requesting further information relative to the fingerprints which had been obtained, as follows:
1. How many fingerprints were lifted from the scene of the burglary?
2. From where were the fingerprints lifted at the scene of the burglary?
3. Which law enforcement officer or district attorney employee lifted the latent fingerprints?
4. How many latent prints matched the defendant's fingerprints?
5. From where at the scene was each latent print, which matched the defendant's fingerprints, lifted?
6. Who made the comparison between the latent prints and the defendant's fingerprints?
7. When and by whom were the set of defendant's fingerprints, which were used for comparison, taken?
The state filed an answer to Starks' supplemental motion, responding that the information was not discoverable. This response was not filed prior to trial, and was admitted as defense exhibit twelve.
The minutes reflect that a hearing was conducted on May 29, 1984, at which time the court determined that the motions for discovery and to produce exculpatory evidence *1032 had been satisfied. The record of that proceeding was not designated by Starks for transcription; although the ruling was assigned as error. Without the benefit of the evidence and testimony presented, the argument of counsel, and the reasons by the trial court, this court will not presume to determine the propriety of the trial court's ruling. Starks subsequently requested a mistrial on this basis, which was denied, and we will review the ruling on this issue.
Martha Hilburn, a latent print examiner for the Louisiana State Police, made the fingerprint identification of Starks and testified at trial with regard to the process. After showing the jury a transparency which illustrated the twelve points of similarity between Starks' known print and a latent print removed from the scene, Ms. Hilburn fingerprinted Starks in open court and compared his prints to the known print; again, the same twelve points of similarity were revealed, and she stated, in her expert opinion, that the prints were identical. Thereafter, in explaining the process that was used to make the original comparison, Ms. Hilburn testified that a known print was not actually compard to the print that was lifted at the crime scene because that print would be reversed in the process of removing it. She testified as follows:
... When a latent print is lifted with a transparency, it is actually picked up. When it's lifted with a rubber lift, it's like it is being peeled off of the surface, and this way it appears in reverse of what the known print would be, and when we are running short of time or have a heavy work load, at times we call on the crime lab to make a negative of this to photograph it and not print a picture, just submit the negative to us. We reverse the negative, and we look at the latent in the way that it should be because it's much quicker to make an identification in that position than it is to do it backwards.
She then testified that, because the fingerprint was removed with a rubber lift, this procedure was used in making the comparison, and indicated that it is the normal procedure for prints removed with the lift.
Defense counsel questioned Ms. Hilburn extensively regarding the fact that the known print was actually compared to a negative, and the negatives were shown to counsel. Starks did not request the opportunity to have the prints compared by an independent examiner.
At the close of the state's case, when the exhibits were presented for admission into evidence, out of the presence of the jury, Starks objected to the admission of the state exhibit consisting of the blowup transparency of the inked and latent prints because the original of the known print was not in evidence. The state responded that the original had not been offered because it was, in fact, from a previous arrest card of Starks. The court overruled defense counsel's objection and ordered the transparency admitted. Before the jury was returned, defense counsel specifically delineated her objections to the identification in light of the fact that Ms. Hilburn had indicated that she made her identification on the basis of a negative, not the rubber lift which was admitted into evidence, and no clear evidence had been presented that the negative used by Ms. Hilburn was in fact an image from the rubber lift. Noting that the objection was based on the sufficiency of the chain of evidence, the court again overruled defendant's objection. Defense counsel then requested a mistrial, based on the lack of full evidentiary disclosure and the gap in the chain of evidence, arguing that she had specifically asked the state to provide information revealing when and by whom the sets of Starks' fingerprints to be used for comparison purposes (the known print) were taken, and information revealing the material to which defendant's prints had been matched; this information had not been furnished. The state again responded that the information sought was not discoverable, and the court denied the motion for a mistrial.
Starks now argues that the state denied him full discovery and the constitutional *1033 right to present a defense by failing to answer the supplemental discovery motion. He argues that, since he did not become aware of the "irregular" procedures employed in examining the fingerprints until well into the trial, he was unable to prepare an argument against the unreliability of the procedure employed by Ms. Hilburn.
Initially, it should be noted that the evidence does not indicate that the procedure used in examining the fingerprints from the rubber lift was irregular, as Starks claims. To the contrary, Ms. Hilburn indicated that it was more expedient to photograph and use a reverse negative for comparison purposes because the procedure used to remove the print resulted in a reversal of the image to be compared. Further, although Starks claims that he would have been able to prepare a defense based on the unreliability of this method if he had been advised earlier that it had been used, any prejudice that might have resulted was obviated by the immediate, positive identification by Ms. Hilburn after Starks was fingerprinted at trial.
Mistrial is a drastic remedy, and, except in instances in which mistrial is mandatory, it is warranted only when a trial error results in substantial prejudice to defendant depriving him of a reasonable expectation of a fair trial. State v. Gibson, 459 So.2d 1294 (La.App. 1st Cir.1984). For the reasons set forth below, we do not find error in the court's ruling.
Except as specifically provided by statute, a defendant in Louisiana is not entitled to the discovery of reports, memoranda, or other internal documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case. La.C.Cr.P. art 723; State v. Cobb, 419 So.2d 1237 (La. 1982). Subject to the limitation of Article 723, supra, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph or otherwise reproduce books, papers, documents, or copies of portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
La.C.Cr.P. art. 718. However, the prosecutor has no constitutional duty to make a complete and detailed accounting of all police investigative work on a case to defense counsel. U.S. v. Brown, 628 F.2d 471 (5th Cir.1980); State v. Sagona, 451 So.2d 1171 (La.App. 1st Cir.1984); writ denied 456 So.2d 172 (La.1984).
Starks does not argue that he was denied access to the fingerprints themselves in order to make his own analysis of the identification. He asserts that, since he was denied access to the procedure used to make the comparison, he was unable to prepare a defense based on the unreliability of that procedure.
Although Starks argues that the failure to reveal the comparison method denied him full discovery, we note initially that none of the questions of the supplemental report are concerned with the methodology used; therefore, even if the state had fully responded to each question, Starks would not have had the information to which he claims he was denied access. Even though it could be argued that this information might have persuaded Starks to more closely scrutinize the methodology used, there is no evidence that the suppression created a "reasonable doubt that did not otherwise exist." See, United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), wherein the United States Supreme Court found that a conviction was not reversible even though the prosecution failed to provide certain background information about the victim that arguably bore on defendant's plea of self defense because defendant had not made a specific pretrial request for favorable evidence. Without determining whether Starks would, in fact, have been entitled to *1034 be advised of the method used in comparing the prints if he had made specific inquiries into the issue, we find Starks' argument that he was denied discovery on that specific issue through the refusal of the state to supply the ancillary information to be without merit.[2] The trial court did not err in refusing Starks' request for a mistrial based on the alleged failure of the state to comply with Starks discovery motion.
Starks has not specifically briefed the issue of his entitlement to the information under the request for Brady materials. Even if it could be determined that the information relative to the method used in making the fingerprint comparison should have been disclosed as Brady material, in light of the subsequent positive identification of Starks' fingerprints at trial, we do not find this information would have been likely to alter the jury's verdict. See State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Sylvester, 388 So.2d 1155 (La.1980). The trial court did not err in denying Starks' request for a mistrial based on the failure to disclose possible Brady material.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, Starks argues that the trial court erred in admitting a state exhibit into evidence over his objection.
Starks objected to the admission of state exhibit seven, the rubber lift used to remove the fingerprint from the scene of the crime. Starks argues that, since the testimony established that the identification was actually made by comparing the known print to a negative image of the rubber lift, and not the lift itself, the state failed to prove that the evidence introduced at trial was more probably than not the evidence originally seized.
Ms. Hilburn testified that the photograph of the rubber lift was made by Charlie Andrews of the state crime laboratory. Andrews did not testify at trial. Before the lift was admitted into evidence, defense counsel objected, based on the lack of chain of custody. The trial court ordered the lift admitted. Thereafter, Starks requested a mistrial, urging, inter alia, the grounds that a legal defect exists in the proceedings because of the ruling ordering the lift admitted. The trial court denied Starks' motion for a mistrial.
This assignment of error has no merit. Identification of physical evidence can be visual or by chain of custody. State v. Gibson, supra. (Emphasis added.) Wayne McDaniel of the Baton Rouge City Police identified the lift as one taken by Officer Wallace at the scene of the burglary of Caruso's Grocery Store. Ms. Hilburn also identified the lift as one containing two latent prints that were submitted to her for identification on September 16, 1983 and identified by her as belonging to defendant. We find the rubber lift to have been sufficiently identified to be admitted at trial. We find no error in its admission or the denial of a mistrial requested because of its admission.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, Starks argues that the court erred in admitting a state exhibit, consisting of a supplementary report, into evidence over his objection.
The supplementary report, state exhibit eleven, contains the results of the comparison of the known fingerprint and the latent prints obtained from the store. Ms. Hilburn testified that each of the three examiners in her department reviews every exhibit to eliminate any room for error. The report admitted into evidence was the original copy and bore the signature of Ms. Hilburn, Carole Richard and Sybil Guidry, which signatures evidenced that all three *1035 examiners did, in fact, examine the prints. This original report had been sent out by her office on September 26, 1983. Defense counsel showed Ms. Hilburn her photocopy of that same report, which had been furnished on May 29, 1984, two weeks prior to trial, and which did not bear the signature of the other two examiners. Ms. Hilburn was unable to explain how the copy submitted to defense counsel did not bear the same markings that the original report purportedly bore when mailed from her office some eight weeks before. Starks now argues that this inconsistency evidences the fact that the exhibit was tampered with and, therefore, shown to be unreliable.
The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered; it suffices if the custodial evidence establishes that it is more probable than not that the object is one connected with the case. State v. Gibson, supra. Any deficiencies in the chain of custody are properly attributable to the weight, rather than the admissibility of the evidence. Id.
We find no error in the admission of this report. Ms. Hilburn repeatedly identified the report as her work product. Although Starks' copy, admitted into evidence as defense exhibit eleven, does not bear the same signatures as the copy admitted by the state, the jury was clearly aware of the discrepancies in the signatures, and chose to find the report reliable. The weight to be given evidence is within the province of the finder of fact, and will not be reviewed on appeal. See, State v. Sensley, 460 So.2d 692 (La.App. 1st Cir. 1984); writ denied 464 So.2d 1374 (La. 1985). The trial court did not err in permitting the exhibit to be admitted into evidence.

PATENT ERROR
The sentence imposed herein included restitution and/or reparation in the sum of $1975.00. No statutory authorization exists for the imposition of this condition unless the trial court suspended the imposition or execution of sentence. La.C. Cr.P. art. 895; La.C.Cr.P. art. 895.1. Suspension of sentence is prohibited for defendant herein, as a second felony offender. La.C.Cr.P. art. 893. The provision requiring Starks to pay restitution or reparation is illegal. See State v. Savoie, 448 So.2d 129 (La.App. 1st Cir.1984); writ denied, 449 So.2d 1345 (La.1984). The sentence is amended to hereby vacate that provision. Starks' conviction and sentence are otherwise affirmed.
CONVICTION AFFIRMED; SENTENCE VACATED IN PART, AND AFFIRMED AS AMENDED.
NOTES
[1] Defendant's brief incorrectly designates the assignments of error addressed herein. Although the brief indicates that assignment of error number four relates to the denial of a mistrial, we note that the argument actually pertains to assignment number five. Similarly, although defendant indicates that assignment number three was addressed, that error was abandoned, and his argument pertains to assignment number four.
[2] This finding is not meant to indicate the state was correct in replying "Not entitled" to six of the seven questions on the Supplemental Discovery Motion. We feel this information was discoverable in light of State v. Lingle, 461 So.2d 1046 (La.1985). However, because the answers to the questions asked in the Supplemental Discovery Motion would not have provided information supporting Starks' argument, we hold the denial of a mistrial was proper in this case.