**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Celso MALINDEZ, Defendant–Appellant.**

No. 91–5624.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1992.

Decided April 20, 1992.

Miles Sanford Weiss, Charleston, S.C., argued, for defendant-appellant.

Albert Peter Shahid, Jr., Asst. U.S. Atty., Charleston, S.C., argued (E. Bart Daniel, U.S. Atty., Scott N. Schools, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.

OPINION

LUTTIG, Circuit Judge:

The issue presented in this appeal is whether, after *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the defendant in a criminal trial must still establish a *prima facie* case of racial discrimination in the use of peremptory challenges before the Government must come forward with a nonracial justification for these challenges, as required by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We hold that the Supreme Court's decision in *Powers* did not eliminate the *prima facie* case requirement of *Batson*.

I.

On June 12, 1990, a grand jury in the District of South Carolina returned an indictment charging appellant Celso Malindez with two counts of conspiracy to possess with intent to distribute cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846. Jury selection began in the trial of Malindez and codefendant Alberto Davila on January 7, 1991. During jury selection, the Government used all eight of its peremptory challenges, striking four whites and four blacks from

the venire.[1] Of the twelve jurors who were ultimately selected, three were black.

After the Government's sixth peremptory challenge (and its third strike of a black venireman), Malindez and his codefendant objected to the strikes, claiming that they violated *Batson v. Kentucky*. In *Batson*, the Supreme Court held that prosecutors may not peremptorily challenge potential jurors on account of their race. The district court overruled the objection on the grounds that the defendants, both of them Hispanic, lacked standing under *Batson* to claim that the exclusion of black jurors was racially motivated. Malindez was convicted on both counts on January 30, 1991.

On April 1, 1991, the Supreme Court decided *Powers v. Ohio*. In *Powers*, the Court held that a criminal defendant may object to racebased peremptory challenges regardless of whether the defendant and the excluded veniremen are members of the same race. On April 9, 1991, Malindez moved for a new trial based on *Powers*. At the hearing, Malindez argued that after *Powers* a defendant is no longer required to establish the *prima facie* case of discrimination that was required by *Batson v. Kentucky*, and that the Government must provide a race-neutral justification each time it strikes a black venireman. *See, e.g.,* J.A. at 89 ("We believe that under *Powers* the defendant need only show that a minority juror was excluded to establish the *prima facie* claim of discrimination."). The

district court rejected this argument, and denied Malindez's motion for a new trial on the grounds that Malindez had failed to make out a *prima facie* case. *Id.* at 113–16, 119.

■ Before this court, Malindez reasserts his argument that after *Powers*, a defendant is not required to establish a *prima facie* case of discrimination.[2] For the reasons that follow, we reject Malindez's argument.

## II.

■ *Batson v. Kentucky* announced the general principle that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89, 106 S.Ct. at 1719. In *Batson*, the Court laid down a shifting burdens scheme for proving racial discrimination in jury selection. A criminal defendant alleging racial discrimination in the selection of a jury must first establish a *prima facie* case of purposeful discrimination in the exercise of peremptory challenges; once the defendant has made out a *prima facie* case, the burden shifts to the prosecutor to come forward with a neutral explanation for the peremptory challenges exercised against the black veniremen. *Id.* at 96–97, 106 S.Ct. at 1723.[3]

---

1. On appeal, Malindez claims that the Government struck *six* prospective jurors, of whom four were black. However, the record reflects that the Government struck seven prospective jurors and one prospective alternate juror for a total of eight. *See* J.A. at 20–31.

2. Malindez does not appear to challenge the district court's finding that Malindez failed to make out a *prima facie* case. On this record, such a claim would have no merit in any event. The fact that 50 percent (four out of eight) of the Government's peremptory challenges were exercised against black veniremen, standing alone, is insufficient to establish a *prima facie* case of purposeful discrimination, *see United States v. Grandison,* 885 F.2d 143 (4th Cir.1989) (defendant failed to establish *prima facie* case where six of nine veniremen struck by Government were black), *cert. denied,* 495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990), and Malin-

dez has not offered any other evidence in support of the existence of a *prima facie* case.

3. The Court did not explain with any precision how a criminal defendant should proceed in making out a *prima facie* case. The Court stated that the defendant must show that he is a member of a "cognizable racial group," and that the prosecutor has used peremptory challenges to remove members of the defendant's race from the venire. 476 U.S. at 96, 106 S.Ct. at 1723. But the Court only hinted at what might be required beyond these basic showings. The Court referred to "relevant circumstances" and a "combination of factors" that might give rise to an inference of purposeful discrimination, and provided two examples of actions that might support a *prima facie* case: "a 'pattern' of strikes against black jurors included in the particular venire," and "the prosecutor's questions and statements during *voir dire* examination

Five years after *Batson,* the Court decided *Powers v. Ohio.* The only issue before the Court in *Powers* was whether a criminal defendant may object to race-based peremptory challenges when the defendant and the stricken jurors are of different races. The Court concluded that the Equal Protection Clause also protects against racially motivated peremptory challenges in this circumstance. 111 S.Ct. at 1373. The validity of the *prima facie* case requirement of *Batson* was not at issue in *Powers;* nor was it drawn into question either explicitly or implicitly. Indeed, the Court clearly contemplated that the *prima facie* case requirement of *Batson* would still have to be satisfied after its decision. Toward the conclusion of its opinion, the Court stated that while a criminal defendant and the prospective juror whose exclusion he is challenging need not be members of the same racial group, such "[r]acial identity between the defendant and the excused person" may "provide one of the easier cases to establish ... a prima facie case ... that wrongful discrimination has occurred." *Id.* at 1373–74.

If the language in *Powers* does not provide sufficiently clear evidence that the *prima facie* case requirement still exists after that decision, the Court's decision in *Edmonson v. Leesville Concrete Co., Inc.,* — U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), decided two months after *Powers,* removes any doubt as to its continued existence. In *Edmonson,* the Court extended *Powers* to civil cases. After so holding, the Court remanded the case for a determination as to whether the defendant in that case had established a *prima facie* case. *See id.* 111 S.Ct. at 2088–89 ("It remains to consider whether a prima facie case of racial discrimination has been established in the case before us ...."). The

Court obviously would not have remanded the case for such a determination had it eliminated the *prima facie* case requirement in *Powers.*

Malindez argues that it follows logically that a *prima facie* case of racial discrimination is no longer required from the fact that the right recognized in *Powers* is that of the venireman to serve on a jury, not—as in *Batson*—the right of the defendant to be tried by a jury from which members of his race have not been excluded. We disagree. The purpose of the *prima facie* case requirement is to separate meritless claims of discrimination from those that may have merit. *Cf. Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) ("The prima facie case serves an important function in [Title VII] litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection."). There is no less need to identify and eliminate meritless cases where the defendant is asserting the rights of the excluded venireman in a third-party action than where he is asserting his own rights directly.[4]

Malindez's argument, at bottom, is that a presumption of racial discrimination arises from the mere fact that a racial minority has been struck from the venire. We rejected this argument in *Grandison, see* 885 F.2d at 149 ("A prima facie case of discrimination does not arise 'every time a prosecutor strikes a black prospective juror.' " (quoting *United States v. Lane,* 866 F.2d 103, 105 (4th Cir.1989)), and we do so again today. Malindez's conviction is affirmed.

AFFIRMED.

---

and in exercising his challenges." *Id.* at 96–97, 106 S.Ct. at 1723. This court has previously observed that "[n]o per se rule exists to establish a prima facie case of purposeful discrimination," *Grandison,* 885 F.2d at 147, and we make no attempt here 6350 35 8 to define the elements of a *prima facie* case.

**4.** *See United States v. Rodriguez,* 935 F.2d 194 (11th Cir.1991) (*per curiam* ), *cert. denied,* —— U.S. ——, 112 S.Ct. 911, 116 L.Ed.2d 811 (1992).

In *Rodriguez,* the Eleventh Circuit vacated in light of *Powers* an earlier decision in which it had held that an Hispanic criminal defendant lacked standing to challenge strikes exercised against black veniremen. The court specifically stated that upon remand, the defendant "must first establish a prima facie case" in order to prevail on its claim that the Government's peremptory challenges had been exercised in a discriminatory manner. *Id.* at 195.